## Isaacs, et al. v. Isaacs, et al.

(Decided January 13, 1925.)

### Appeal from Jackson Circuit Court.

1. Witnesses—Testimony by Grantee, His Wife and Children, as to Signing and Delivery of Title Bond to them by One Since Deceased, Held Incompetent Under Statute.—Testimony by grantee, his wife and children, to establish signing and delivery of title bond to them by one since deceased, held incompetent, under Civil Code of Practice, section 606, subsection 2.

2. Trusts—Payment for Conveyance to Self and Brother Does Not Create Resulting Trust.—That one paid for land, and had same conveyed to himself and brother, to enable latter to sign former's notes as surety, does not create a trust, in view of express provisions of Ky. Stats., section 2353.

3. Deeds—Burden is Upon One Claiming Benefit Therefrom to Show Validity of Conveyances Between Relatives and Persons Occupying Confidential Relation.—Burden is upon one claiming benefit of conveyances between near relatives and those occupying confidential relation to each other to show, by clearest evidence, that transaction was freely and voluntarily entered into, and devoid of inequitable incidents.

4. Deeds—Evidence Held Insufficient to Show Deed Between Persons Closely Related Free from Inequitable Incidents.—Evidence held insufficient to show that deed to grantor's brother and nephews, with whom he was residing, and by whom he was being cared for while ill, which recited false consideration, was voluntarily entered into and free from inequities.

5. Cancellation of Instruments—Judgment Held Not Objectionable as Cancelling Deeds to Property which Grantor did Not Own.—Judgment canceling deeds, in so far as they included property of grantor, held not objectionable as canceling deeds to property which grantor did not own, though deeds also included land not owned.

A. W. BAKER for appellants.

BEGLEY & MOORE for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

E. P. Isaacs, a resident and citizen of Jackson county, Kentucky, died in that county on November 24, 1918. He had never been married and at the time of his death left surviving him three brothers, Green Isaacs, W. R. Isaacs, and G. P. Isaacs; three sisters, Anise Lakes, Lottie Tyra and Lena Tyra; two nieces, Mary J. McQueen and Alice Rose; and a nephew, Pal. Isaacs, as his heirs at law.

Mary J. McQueen was the daughter of one of E. P. Isaacs' sisters who died before he did, and Pal. Isaacs and Alice Rose were the children of one of his brothers who died before he did.    He died intestate and then owned the title of record of 86 acres of land, consisting of three small tracts which adjoined each other.    In March, 1921, all of his above mentioned heirs, except the brother, G. P. Isaacs, as plaintiffs, filed a petition in equity in the Jackson circuit court against G. P. Isaacs and his wife, by which they sought to have the 86 acres of land sold and the proceeds divided according to their interests in it, claiming that they and he had inherited it from E. P. Isaacs.    Appellant, G. P. Isaacs, filed an answer by which he claimed to own the 86 acres of land under a title bond alleged to have been executed and delivered to him by E. P. Isaacs in December, 1907.    By reply appellees denied appellant's right to the land under the title bond, and affirmatively pleaded that E. P. Isaacs did not sign, execute or deliver it to appellant.

It appears that the decedent, E. P. Isaacs, and appellant, G. P. Isaacs, at different times had purchased and there had been conveyed to them jointly a number of tracts of land in Jackson county, Kentucky.    In March, 1918, some nine months before the death of E. P. Isaacs, by their joint deeds of conveyance they conveyed all the lands—the title of which was held by them jointly—to the various children of appellant, G. P. Isaacs, a separate deed being made conveying separate lands to each child. After G. P. Isaacs filed the answer in the original suit claiming the 86 acres of land sought to be sold therein, the parties who sued as plaintiffs in that action filed suit against G. P. Isaacs and his children, to whom the deeds had been made on March 11, 1918, for a cancellation of those deeds in so far as they undertook to convey any interest owned by E. P. Isaacs in the land sought to be conveyed by them, upon the ground that the execution of the deeds had been procured by fraud and undue influence, and the further ground that at the time he signed, acknowledged and delivered them E. P. Isaacs was of unsound mind and did not have sufficient mental capacity to convey his property. The defendants in the second action denied the allegations as to fraud, undue influence and lack of mental capacity and invoked the same title bond relied upon by G. P. Isaacs in the first suit to aid them in their defense. They claimed that the deeds in question

were made to carry out the provisions of the title bond
executed by decedent, E. P. Isaacs, in 1907. The plaintiffs
in the second action, with reference to the title bond in
question, as in the first, relied on a plea of *non est factum*.
The two actions were consolidated and upon the trial in
the court below the chancellor adjudged the title bond to
be invalid; that E. P. Isaacs owned the 86 acres of land
when he died; and that the deeds in question be cancelled
in so far as they undertook to convey the interest of de-
cedent, E. P. Isaacs, in the lands sought to be conveyed by
them. This appeal is prosecuted by G. P. Isaacs and his
children from that judgment, and they insist that the
chancellor erred in cancelling the deeds and adjudging
that G. P. Isaacs was not entitled to have the 86 acres of
land conveyed to him under the title bond.

As the case was prepared and tried and as is con-
ceded by the brief filed herein by counsel for appellant,
the vital question for determination is the validity or
nonvalidity of the title bond under which appellant, G.
P. Isaacs, claims the 86 acre tract of land and the other
appellants, his children, claim E. P. Isaacs' interest in
the other lands conveyed to them by the deeds. The
pleadings in the case beyond all question cast upon ap-
pellants the burden of establishing by competent evidence
the execution of the title bond by E. P. Isaacs. The
chancellor adjudged that none of the evidence offered by
appellants to establish that fact was competent. Our
consideration of that question forces us to the same con-
clusion. G. P. Isaacs and his wife, Matilda Isaacs, and
some two or three of their children, to whom the lands
were conveyed by the deeds in question, testified that E.
P. Isaacs signed and delivered the title bond. They were
all parties in interest and in testifying on that question
were testifying for themselves concerning a transaction
had with a decedent and concerning acts done by a dece-
dent. Such testimony is in direct conflict with subsection
2 of section 606 of the Code of Practice, and the chan-
cellor properly adjudged all of that testimony to be in-
competent. No other testimony was offered by appel-
lants to establish the execution of the title bond.

Appellants contend by their testimony that after the
execution of the title bond decedent, E. P. Isaacs, never
owned or claimed to own any of the lands in controversy
or any property of any kind. The record discloses, how-
ever, that subsequent to the date of the title bond and
down to the date of the death of E. R. Isaacs, the 86 acre

tract of land in controversy was listed for taxation each year by E. P. Isaacs as his property, while all the lands owned jointly by the two brothers, together with the live stock and personal property, was listed by them jointly in the name of Isaacs Brothers. Subsequent to the date of the title bond and for a period of four or five years the two brothers engaged in the mercantile business in a small way under the firm name of Isaacs Brothers, and their banking business was carried on in that name. No witness who testified except appellants ever saw or heard of the alleged title bond until after the suit was brought to sell the 86 acre tract of land, about which time, though it was not a recordable instrument, appellant, G. P. Isaacs, had it recorded in the county court clerk's office. The record discloses that in January, 1918, E. P. Isaacs, suffered a rupture of one of the blood vessels of the brain with resulting partial paralysis; that following this he was so desperately ill, according to the testimony of appellants, that it was necessary for someone to sit up with him at night for a period of forty-two days and to be in constant attendance upon him at all times. The physician who attended him in this illness testified that when first stricken he was in a complete state of coma from the paralysis. The deeds in question were made on March 11th, following the stroke of paralysis in January. One of the appellants, a son of appellant, G. P. Isaacs, had himself appointed and qualified as a notary public just immediately before the deeds were executed. He wrote and took decedent's acknowledgments to the deeds in question. Decedent had made his home with appellant, G. P. Isaacs, at all times after the marriage of the latter and was in his home throughout his illness and at the time the deeds in question were executed. The deeds recited a cash consideration of $500.00 each for the conveyance of the lands respectively conveyed by them, and it is acknowledged by appellants that the consideration was not paid, their claim being that the deeds were made to carry out the alleged title bond executed in 1907. A portion and perhaps the larger part of the lands conveyed by the deeds cancelled herein was conveyed to E. P. and G. P. Isaacs, jointly, after the date of the alleged title bond. To explain that fact appellant, G. P. Isaacs, testified that all the lands so conveyed to him and his brother were paid for by him and that the deeds were made to him and his brother not for the purpose of

vesting in his brother any interest in the land but to make it appear that the decedent was the owner of real estate so that he would be accepted as surety on notes. He testified that in his business transactions he found it necessary frequently to borrow money and that he had the title to the lands conveyed jointly to himself and his brother so that his brother would be accepted as surety on his notes. If appellant had been a competent witness to testify about that transaction—and clearly he is not under subsection 2 of section 606 of the Code of Practice —his own testimony was not sufficient to relieve him because under section 2353 of the Kentucky Statutes it is expressly provided that, though the consideration be paid by another when a deed shall be made to one person, no use or trust results in favor of the one paying the consideration.

As we wrote in Sword v. Fields and Cross, 192 Ky. 629:

"The law is that transactions of this kind between near relatives or those occupying a confidential relation to each other will be closely scrutinized, and the burden is upon him who claims thereunder to show 'by the clearest evidence' that the transaction was freely and voluntarily entered into and devoid of inequitable incidents." (See also Watson v. Watson, 190 Ky. 270 Kelly v. Fields, 167 Ky. 796; Miller v. Taylor, 165 Ky. 463; McDowell v. Edwards, 156 Ky. 475; Bozarth v. Banister, 143 Ky. 476; Smith v. Snowden, 96 Ky. 32.)

If appellants had not staked their case upon the validity of the alleged title bond, which they wholly failed to establish, as shown above, and as held by the chancellor below, we are forced to conclude that the facts and circumstances of this case clearly bring it within the principle of law above quoted. The decedent, whose conveyances are questioned, was the brother and uncle of appellants and resided in their home. He was beyond all question in such a condition both mentally and physically as to render him easy prey to undue influence. It is doubtful from the record whether at the time the deeds were executed he had sufficient mental capacity to realize what he was doing. The deeds falsely recited a consideration that was not paid. One of the beneficiaries of the deeds, who is a brother of the other beneficiaries, wrote them and took the acknowledgments. He was ap-

pointed and qualified to do so within a few days before the acknowledgments were taken. Aside from the testimony of the interested parties no witnesses testified as to the mental capacity of decedent to make the deeds except two, and from their own testimony it is easy to gather that it can not be given much credence. Respecting the recital of false consideration in a deed, in Smith, etc. v. Snowden, etc., 96 Ky. 32, we said:

"The recital of the false consideration carries with it the thought and purpose of a designing and intentional concealment of the truth, and this falsehood and concealment are the highest evidences of the fraudulent intent with which the writings were procured, not necessarily of actual but of constructive fraud, assumed in view of the relation of the superior contracting with the inferior, the independent with the dependent, the strong with the weak. The grantees, it seems to us, can find no relief in assuming the position, after the attack on the deeds was made, that the real consideration was love and affection, and an agreement to care for the grantors during the remainder of their lives.

"The intent in the procurement of the writings must be gathered from the recitals of the writings themselves, and the beneficiary will not be relieved of the necessary inference of intentional deceit on his part by asserting a consideration inconsistent with the one named in the writing."

In view of the circumstances surrounding the parties and their relations to each other, we can not escape the conviction that the chancellor properly concluded that the burden was upon the grantees in the deeds in question to establish that the transactions were freely and voluntarily entered into and were devoid of inequitable incidents; and that they failed to sustain the burden. In fact, the evidence rather establishes the fraud of the transactions.

It is insisted, however, for appellants that by the judgment rendered below the chancellor cancelled certain deeds when the record shows that decedent, E. P. Isaacs, did not own and never had title to the lands conveyed by those deeds. It does appear from the record and the copies of the deeds filed therein that by two of the deeds cancelled there were conveyed to the grantee lands in

which decedent owned no interest. However, by each of those deeds there was also conveyed to the grantee another tract of land, the title of an undivided one-half of which decedent did own. The judgment of the chancellor cancelled the deeds only in so far as they undertook to convey any interest owned by decedent, E. P. Isaacs. The judgment is not subject to the criticisms offered by appellant.

Finding no error in the judgment appealed from herein it will be affirmed.