## Campbell v. Schorr, et al.
## Rowland v. Campbell, et al.

(Decided December 6, 1927.)

### Appeals from Whitley Circuit Court.

1. Deeds.—In action to quiet title to, and enjoin trespass on, disputed strip of land, evidence held to show that unrecorded deed to defendant's predecessor in title was genuine.
2. Acknowledgment.—Under Ky. Stats., sec. 3760, a deed, duly certified by notary public under his seal, is conclusive, in absence of fraud in party benefited or mistake of officer.
3. Champerty and Maintenance.—Where deed to one suing to quiet title and enjoin trespass was made when land was in adverse possession of others, grantors had no title to convey, and court properly dismissed such plaintiff's petition.
4. Boundaries.—Under deed of 48 feet of land south of fence, as to proper location of which there was no dispute, to fence, as to location of which in its original place there was some dispute because of change in street line, grantees' south line should run parallel with, and 48 feet from, south line of lot to north.
5. Injunction.—Plaintiff, in suit to quiet title to and enjoin trespass on land, can recover only on his own title.

STEPHENS & STEELY for appellants.

W. B. EARLY for Rowland.

TUGGLE & TUGGLE for Campbell.

STEPHENS & SEELY and W. B. EARLY for Schorr.

J. D. TUGGLE for Campbell and others.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

George Schorr brought this action on March 29, 1924, against J. B. Campbell, alleging that he was the owner of a lot in Corbin, Ky., and that Campbell had encroached upon him. He prayed that his title be quieted, and that Campbell be enjoined from trespassing upon him. Campbell answered, alleging title in himself to the strip in controversy and praying that his title be quieted. S. R. Rowland, on March 29, 1924, brought an ordinary action against Campbell, asserting title in himself to a strip of ground, 4' 6'' wide and alleging that Campbell had forcibly trespassed upon it. Campbell answered the petition, denying the title of Rowland, and pleading title in himself. The two cases were heard together. On final hearing the circuit court dismissed Rowland's petition, and adjudged the strip claimed by Campbell to Schorr. Campbell appeals.

The town of Corbin was originally laid out in blocks 210 feet square. Each of these blocks was divided into lots 105 feet square, and numbered. The controversy here is over lots 36 and 37, and is illustrated on the map given below:

On September 16, 1896, J. L. Morgan conveyed to Rosa G. Rowland the northern half of lot 36, which is indicated on the plat by the lines 2, 3, 13, and 14. On September 29, 1895, F. D. Chestnut conveyed to J. D. Row-

-land, the husband of Rosa G. Rowland, lot 37. This made the Rowlands the owners of all of lots 36 and 37 lying north of the line 2, 3. On March 16, 1898, the Corbin Land Company conveyed to Hannah Edmonds the south half of lot 36, indicated on plat by lines 1, 2, 3, 4. On August 31, 1899, Rowland and wife conveyed to G. C. Schorr a lot 48'x105', on which a house then stood, and inclosed by a fence. The controversy turns on the proper location of this lot. On November 2, 1901, Rowland and wife conveyed to A. J. Needles a lot 95'x105', lying next to Second street 95 feet. This lot is indicated on the plat by the lines 12, 7, 8, and 9. These deeds were all duly recorded. On April 24, 1897, Rowland and wife conveyed to H. L. Edmonds a strip fronting on Main street 15 feet, and running back 105 feet, bounded on the south by the lands of H. L. Edmonds, indicated on the map by lines 2, 5, 6, and 3. This deed was not recorded, but it was produced when these actions were filed, and was then recorded. The authenticity of the deed is denied. And this is the first question to be decided on the appeal.

Edmonds and his wife separated many years ago. His wife married again. The deed comes from the custody of Edmonds who delivered it to E. J. Wyrick, under whom Campbell claims. The deed is duly certified by the notary public under his seal as acknowledged before him on April 24, 1897. The original has been brought up with the record, and its appearance shows it to be an ancient paper. It is true that it is dated April 24, 1897, and the deed to Edmonds for the south half of lot 36 is dated March 16, 1898. But a deed is often made long after the purchase of a lot. The proof shows that Edmonds was living on the land some time before the deed was made to him, and it also shows that he built a fence around the lot, as he claimed to own it, and that this fence followed the lines 1, 5, 6, and 4. This was the condition when Schorr bought. Edmond's fence was there, and Schorr testifies that he bought the land between the two fences. Edmonds was then living on the south end of the lot, and maintained this fence on the north end. In addition to this, the privy, which was used as a part of the Edmonds premises, stood on this 15 foot strip, and the strip was used without controversy as a part of that lot, not only by Edmonds, but by all the persons who lived there from the time that Edmonds left until this action was brought. Rowland and his wife left

after they sold to Needles, and paid no taxes on any part of these lots, and asserted no claim to any part of it for years. In 1908 they conveyed a strip 15 feet wide to their son Shelby Rowland, but he asserted no claim to the property, paid no taxes on it, and suffered the people who were in possession to remain without complaint, and failed to pay, not only the ordinary taxes, but the assessments made on the property for the street in front. Thus things stood until this suit was brought. The conduct of the parties speaks louder than words. From all the evidence the court concludes without doubt that the deed of April, 1897, is genuine, and that this controversy has arisen simply by reason of the fact that that deed was not recorded, and that in the numerous troubles which occurred in the Edmonds family the deed was forgotten. No possible reason can be given for the Rowlands' reserving a strip 15 feet wide in the center of this lot, and all the confusion in the case has arisen from the fact that Edmonds was a drinking man, and failed to record this deed after he had put his fence around the land. 52+15+48+95=210.

The deed, being duly certified by the officer, under his seal, is conclusive, in the absence of fraud in the party benefited or mistake on the part of the officer, and of this there is no proof. Section 3760, Ky. Stats., provides:

"Unless in a direct proceeding against himself or his sureties, no fact officially stated by an officer in respect of a matter about which he is by law required to make a statement, in writing, either in the form of a certificate, return or otherwise, shall be called in question, except upon the allegation of fraud in the party benefited thereby, or mistake on the part of the officer."

There seems to be no question that the deed executed by Rowland and wife to their son was made when the land was in the adverse possession of Wyrick and those claiming under him, and, as has been said, Rowland and wife had no title to convey at the time this deed was made. The circuit court therefore properly dismissed the petition of Shelby Rowland. There is no dispute as to the proper location of the fence at the south end of the Needles lot. Schorr bought 48 feet lying south of that fence, and between it and the Edmonds fence. But there is some dispute as to whether the fence now on the

ground runs as the Edmonds fence then ran. In addition to this, it appears that, when Third street was improved, it was shoved south 4 feet at this point to make it a straight street. It was laid off as a straight street, and so this means that the street, before it was improved, had been shoved 4 feet north of its original location. Possibly, in building his fence, originally, Edmonds measured from the street as it then stood, and, whether he did or not, the purpose was to put the fence on the line. Under all the facts Schorr's south line should run parallel with the south line of the Needles' lot, and 48 feet from it. On the return of the case to the circuit court the court will locate Schorr's south line as above indicated, and will adjudge the remainder of the strip in controversy to Campbell. Schorr can recover only on his own title.

Judgment reversed in the case of Campbell against Schorr, and cause remanded for a judgment as above indicated.

Judgment affirmed in the case of Rowland against Campbell.