## McCormack v. Clouse et al.

(Decided May 19, 1936.)
(As Modified on Denial of Rehearing Dec. 8, 1936.)

WILLIAM N. NATCHER, JOE S. GARMAN and DELMA L. MAUZEY for appellant.

HEAVRIN, HEAVRIN & MARTIN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The judgment appealed from was rendered on a reply to an answer and counterclaim of a mortgagee to the petition of the owners of the mortgaged property in an action by them against the Hartford Fire Insurance Company to recover of it on an insurance policy it had executed and delivered to the owners, agreeing to pay them, in the event of loss by fire of the property described in the policy, the sums therein stated.

We are confronted with a motion to dismiss the appeal. Rule 4 of this court requires:

"Notice of all motions made in Court, unless waived in writing, must be given to the adverse party or his attorneys of record in accordance with the provisions of sections 624 to 631, inclusive, of the Civil Code."

In Seibert v. Grief, 86 S. W. 970, 27 Ky. Law Rep. 824, we said of this rule: "The rule is an important one, and must be complied with when the motion is not made on the regular call of the cases," therein no notice of the motion appeared to have been given. A motion to dismiss the appeal was therefore not considered. In the present case "no notice of the motion appears to have been given." It therefore will not be considered.

The statement required by section 739 of the Civil Code of Practice was filed by W. M. McCormack in which he requested, as required by section 739, a summons for Dan Clouse, Marie Clouse, Viola McCormack, and Scott McCormack, who were designated in the statement as appellees. Considering this statement as a whole, it must be regarded as an application for an appeal under section 734 of the Civil Code of Practice. For this additional reason, the motion to dismiss is overruled. The Clouses complain because their attorneys and the insurance company are not made parties to this appeal. It is sufficient to say that the Clouses were the parties to the action to whom relief was granted by the judgment rendered, and the determinative questions on this appeal are their rights thereunder and W. M. McCormack's right to the relief of which it deprives him.

With the motion to dismiss the appeal disposed of, it becomes our duty to determine whether the pleadings authorize the judgment in favor of Dan and Marie Clouse; no verbal testimony having been introduced by either party.

In their petition setting up their cause of action against the Hartford Fire Insurance Company, they alleged they were the "owners in fee simple of the land upon which said buildings were situated, in Grayson County, Kentucky, subject, however, to a mortgage due W. M. McCormack of Bowling Green, Kentucky, as set out in loss payable clause attached to said policy." Their petition was verified. Later, they filed an amended petition, making W. M. McCormack a defendant. In it they "reiterated and adopted all of the allegations of their original" not inconsistent with those in the amendment, and made the original "a part of the amendment," and alleged that W. M. McCormack "is a necessary party to this action," and asked that he be made a defendant, and "a summons be awarded against him."

To secure the policy of insurance of the Hartford Fire Insurance Company, they executed and delivered to it a written application containing a description of the property they desired covered by the policy to be issued thereon by it to them. In the application they were asked if the land was encumbered. Their response was "Yes, $1,200.00," "due September 1934"; "the

name and address of mortgagee, W. M. McCormack, Bowling Green, Kentucky.''

One defense of the Hartford Fire Insurance Company was that their answer was false; at that time, in truth, the encumbrance was $1,800, with accrued interest from September 16, 1931, and no part of which had ever been paid at the time of the occurrence of the loss described in their petition. It pleaded these facts were a violation of the policy and constituted a bar to their recovery. In avoidance of this defense they denied ''that they or either of them, knew at the time they made the application for the insurance that the property embraced in said insurance policy was encumbered for more than $1,200.00.'' And alleged that at the time the property covered by the insurance policy was conveyed to them they were informed by Viola Gary McCormack, one of their vendors, ''that W. M. McCormack held a note against her for $1,200.00, secured by a mortgage on the real estate embraced in the said conveyance, and that these plaintiffs agreed to assume the payment of the said $1,200.00.'' And that ''they relied on her representation and made no personal investigation of the mortgage,'' they residing at the time 15 miles from the county clerk's office, where the mortgage was recorded, and that they ''did not know any difference until after this litigation was instituted in the Grayson circuit court and until the defendant, W. M. McCormack, filed his answer herein.'' This reply was verified by Dan Clouse on the 12th day of January, 1935. It was filed in court January 16, 1935. The answer and counterclaim of W. M. McCormack to which they refer in their reply to the answer of the insurance company contains the necessary allegations to constitute a cause of action against Scott McCormack and Viola Gary McCormack, and charged that they had executed and delivered to him on the —— day of September, 1931, a note for $1,800, with interest payable twelve months after date, and the mortgage on the land, ''mentioned in the plaintiff's petition,'' to secure the payment of the note.

A copy of the mortgage is made an exhibit to his answer and counterclaim. His answer contains, hæc verba, the loss payable clause, showing the policy was payable to him to satisfy his $1,800 note.

454

He sought the subjection of the proceeds of the policy to its payment, but did not ask for the enforcement of his mortgage. While Scott and Viola Gary McCormack were parties to the action, W. M. McCormack's answer was not made a cross-petition against them, and he sought no judgment against them.

On the 7th day of January, 1935, the Clouses by a reply traversed the answer and counterclaim of W. M. McCormack. They therein denied "that Scott McCormack and Viola Gary McCormack, or either of them, made, executed, acknowledged or delivered to the defendant, W. M. McCormack, a mortgage on the land mentioned in the plaintiff's petition to secure the payment of a note in the sum of $1,800.00 or any part thereof; or that said note was due and payable twelve months or any month after date or that the same is now past due or due at all or unpaid or with interest thereon from date or at all." They also denied that, "for a good and valuable consideration or at all," the land mentioned in their petition had been "sold, deeded or conveyed to the plaintiffs or either of them" by Scott McCormack and Viola Gary McCormack"; or "that a part of the consideration or any part of the consideration was the plaintiffs or either of them assumed the payment of the defendant, McCormack's note, or any part thereof." They denied that, when they obtained the insurance policy or at all, it contained a loss payable clause payable to W. M. McCormack. In the second paragraph they admitted the execution and delivery of the note and mortgage described in his answer and counterclaim, and alleged that, if the note was executed at all, it represented a loan of W. M. McCormack to Scott McCormack, and was his individual debt, and no part of it was the indebtedness of Viola Gary McCormack; that she was merely a surety thereon; and that under section 2128, Kentucky Statutes, she could not be held liable as surety on the note of her husband, which she pleaded "as a complete defense and bar to the enforcement of said note against them." They further alleged that the "mortgage set up in the answer of W. M. McCormack, which purported to have been signed by Scott McCormack and Viola Gary McCormack on the 16th day of September 1931, and executed and acknowledged by them and delivered to W. M. McCormack on said date was not in fact signed by said Scott McCormack, or

acknowledged by him, and that the said Scott McCormack did not sign said note or mortgage or acknowledge such mortgage on September 16th, 1931, or at any other time, and if his signature appears on said note or mortgage, the same is a forgery and was placed thereon by someone other than Scott McCormack.'' They quote a part of section 506, Kentucky Statutes, providing in effect that a conveyance by a husband and wife may be by joint or by separate instruments; but in the latter case the husband must first convey, or have theretofore conveyed. Following this is the allegation that Scott McCormack and Viola Gary McCormack were husband and wife, ''and he not having signed such mortgage or acknowledged the same, said mortgage was and is void and of no force and effect whatever.''

A careful reading of their reply discloses that it contains no denial of the execution and delivery of the note by Viola Gary McCormack. Nor does it contain any language purporting to deny the execution and delivery of the loss payable clause attached to the policy. Therefore it was not a defense to McCormack's rights under the loss payable clause. It is true that it is alleged in the second paragraph that she was a married woman at the time she executed the note and she received no part of the consideration, and therefore was not liable thereon under section 2128, Kentucky Statutes. If this allegation be considered true, and we shall so consider it for the purposes of the case, the Clouses having secured the insurance policy and caused a loss payable clause to be attached thereto for the payment of the note, the statute did not have the effect of releasing her from the obligation thus created for the payment of the note out of the proceeds of the policy. Her coverture did not abrogate McCormack's right to the proceeds of the policy under a loss payable clause as a pledge for the payment of his note. At most, her coverture protected her against a personal judgment on the note, and no more.

Adverting to the sufficiency of the language of the reply to constitute a defense to either the note or the mortgage or the loss payable clause attached to the policy, according to the accepted rules of pleading, governing defenses to a written instrument purporting to have been signed by the maker, Clouses' mere denial the makers had signed or executed or delivered the in-

struments which are the basis of W. M. McCormack's cause of action is insufficient to constitute a defense to his cause of action thereon. Trustees of Kentucky Female Orphan School v. Fleming, Ex'r, etc., 10 Bush, 234; Dugan's Adm'r v. Harris' Adm'r, 6 Ky. Law Rep. 596; Garrett's Adm'r v. Ashcraft, 39 S. W. 51, 19 Ky. Law Rep. 38. Such defense must be made in affirmative, and cannot be made in merely negative, language.

A comparison of the allegations in the Clouses' reply to McCormack's answer and counterclaim, with the condemned pleading in Garrett's Adm'r v. Ashcraft, shows the fatal defects in their reply and its insufficiency to constitute a defense to the $1,800 note or his right to the proceeds of the policy under the loss payable clause attached to the policy. This is true, though Viola Gary McCormack was merely surety on the note and under the disability of coverture at the time she signed it, and the mortgage was not signed by Scott McCormack as required by section 506, Kentucky Statutes.

Aside from this, they admit in the second paragraph of the reply that she had signed the note as surety. With this admission, together with their failure to deny the execution of the loss payable clause attached to the policy, as a pledge to secure the payment of the $1,800 note, the denials in their reply were no defense to McCormack's right to have the proceeds of the policy subjected to the payment of the $1,800 note, though the mortgage on the land was invalid and unenforceable. This is true, even though it be admitted that Scott McCormack had not signed the mortgage. The Clouses having admitted in their reply that Viola Gary McCormack signed the note as surety while she was a married woman, and that by the loss payable clause attached to the policy they had pledged the policy to W. M. McCormack to secure the $1,800, he, manifestly, was entitled on his answer and counterclaim to have its proceeds subjected to the payment of the note and interest, the denials in their reply to the contrary notwithstanding.

Again reviewing the allegations of their reply in connection with the note and mortgage to secure it, there is no denial of the statement in W. M. McCormack's answer and counterclaim that a copy of the certified and recorded mortgage was attached thereto as an exhibit.

With their reply thus admitting, by failing to deny, the copy was filed, it must, for the purpose of the case, be regarded as filed. It is true that their reply avers that the mortgage "was not in fact signed by Scott McCormack or acknowledged by him," and that he did not sign the note; the note and mortgage are "forgeries." Such averments are not an attack on the officer's certificate showing the acknowledgment of the mortgage, nor a charge of fraud in its procurement by W. M. McCormack.

The accepted rule in such case is, in the absence of fraud on the part of the party benefited, or a mistake on the part of the officer, a mortgage duly certified by a proper officer is conclusive of its execution. Byers v. First State Bank, 159 Ky. 135, 166 S. W. 790; Everman v. Everman (Ky.) 122 S. W. 135; Campbell v. Schorr, 224 Ky. 1, 5 S. W. (2d) 278; Crawford v. Crawford, 224 Ky. 535, 6 S. W. (2d) 685. Testing their reply by this principle, it is wholly inadequate to constitute a defense. It is very plain that W. W. McCormack was entitled to judgment on the pleadings, decreeing the $1,750, the proceeds of the insurance policy, to be applied to the payment of the $1,800 note.

Leaving aside these views and giving attention to sections 90 and 98, Civil Code of Practice, we find that section 90 requires the petition to state facts constituting a cause of action. Section 98 permits a reply to contain only a traverse, facts constituting an estoppel against, or avoidance of, a set-off or a counterclaim or a defense stated in the answer, or a counterclaim against the set-off or a cross-petition. The Clouses' petition against the insurance company admitted the existence of W. M. McCormack's note and mortgage and of the loss payable clause payable to him.

Plainly, in so far as their reply controverts the validity of the $1,800 note and the mortgage to secure it, and the pledge of the policy for the same purpose by reason of the loss payable clause attached to it, it was a repudiation of, and a departure from, the allegations of their petition relative to the note, mortgage, and loss payable clause and W. M. McCormack's right thereunder. Such is not permissible under section 98, Civil Code of Practice. Spiess' Adm'x v. Bartley, 130 Ky. 277, 113 S. W. 127, 128; Hodge Tobacco Co. v. Sexton,

166 Ky. 219, 179 S. W. 36; Dixon v. Johnson et al., 202 Ky. 328, 259 S. W. 698, 699.

In Dixon v. Johnson et al., supra, the parties agreed to divide a certain tract of land, and, after the division was made, to execute deeds to each other, conveying the portion allotted to him by the division. In accordance with this agreement, the parties selected commissioners who, after going on the land, made a division thereof as directed, and returned a report in writing duly signed by all of the parties. Dixon tendered Johnson a deed conforming to the report, which he declined. Johnson later filed a suit asking for a division ignoring the above proceeding. Dixon filed an answer, pleading affirmatively the agreement and report in bar of the action. After Johnson's death, the action was revived against the heirs, who filed a reply assailing the report of the commissioners on the ground of inadvertence or mistake. This pleading was later controverted of record. On submission the court set aside and canceled the report of the division and proceeded by appropriate orders to divide and allot the land in accordance with the prayer of the petition. The court's commissioners performed their duty and filed a report, to which exceptions were taken and overruled. Reversing the judgment of the court, we said:

"While matters in avoidance of matters set up in an answer may be pleaded in a reply, affirmative relief cannot be had on such pleading. There was no attempt to avoid the effect of the written agreement and report, but a direct attack thereon asking the cancellation of each instrument. Necessarily the court could not grant the relief sought, unless they were set aside. We think this could not properly be done in a reply."

In the Spiess Case we said:

"The plaintiff cannot in a reply depart from the cause of action stated in his petition, or obtain a judgment by default upon a cause of action set up for the first time in a reply. Under Civ. Code Prac. the cause of action upon which a plaintiff relies to obtain judgment must be set up in a petition, or an amended petition."

Applying our construction of section 98, Civil Code

of Practice, as it is stated in those cases, the Clouses were not entitled to a judgment on the affirmative allegations of their reply, and the court erred in decreeing the contrary.

In view of their verified petition and verified reply to the answer of the insurance company and their voluntary statements in reference to W. M. McCormack's note and mortgage in their application for the policy, the court would have been justified in regarding the allegations of their reply as a sham pleading and in rendering a judgment for W. M. McCormack accordingly.

The parties in their briefs have discussed numerous questions and cited cases in support thereof. It is unnecessary to consider them in this opinion. Nothing said herein shall affect the rights of the attorneys who have been adjudged a lien on the fund for their services.

Wherefore the judgment is reversed, with directions to grant W. M. McCormack a new trial and for proceedings consistent with this opinion.