**J. S. CREECH et al., Appellants,**

**v.**

**Alford MINIARD et al., Appellees.**

Court of Appeals of Kentucky.

June 18, 1965.

Rehearing Denied Dec. 16, 1966.

**433**

A. E. Cornett, Hyden, Stanley R. Hogg, Whitesburg, for appellants.

Ray O. Shehan, Harlan, Denver Adams, Hyden, for appellees.

PALMORE, Judge.

Appellants brought this action to quiet their title to part of a 100-acre tract surveyed in 1844 and patented to William Turner in 1845, and to enjoin appellees from cutting and removing timber from it. Appellees denied appellants' title and asserted ownership in themselves, including title by adverse possession. The chancellor adjudged that appellees own the land through a "conditional line" agreement made in 1883 by their predecessor, David Turner, and appellants' predecessor, Eli Huff, and by adverse possession as well.

Appellants proved record title by mesne conveyances from the Commonwealth. It thus became incumbent on appellees to establish title either through off conveyance by one or more of appellants' predecessors or by adverse possession, or both. The scope of our review is to determine whether there was sufficient competent evidence to support a judgment in their favor.

The land in question is located north and west of Greasy Creek in Leslie County. At the time the conditional line was established Eli Huff owned the William Turner 100-acre patent and David Turner owned the westerly portion of the James Turner 650-acre patent located generally to the southeast of the 100-acre patent, between the latter and Greasy Creek. To the extent of about 25 acres, the northwest corner of the 650-acre patent, which was junior, overlapped the southeast corner of the senior 100-acre patent. There was also a strip of land between the southeast line of the 650 acres and Greasy Creek. Huff and Turner each owned land on both sides of the Creek, Huff downstream and Turner upstream.

Just what lands were in dispute between Huff and Turner when they agreed on the conditional line was not proved. The line is well established from the creek to a large rock, marked EH and DT, on top of a ridge. Running northwestwardly from the creek, it crosses the strip between the creek and the southeast line of the 650 acres. The marked rock on the ridge is within the 650 acres but some 1400 feet south of the 100 acres. Where the conditional line runs from that point is the big issue in the case. Appellees claim it continues across the ridge on a northwesterly course until it strikes the south line of the 100 acres and then follows the boundaries of the 100-acre patent clockwise so as to embrace it all. Appellants claim it follows the ridge, which runs northwardly through the southeast corner of the 100 acres, follows the east boundary of the 100 acres for some distance, and then turns to the northwest so as to cut off about 25 acres in the north-northeast corner of the 100 acres.

The paper title through which the appellees principally claim is a 1930 deed from David Turner to Enoch Lewis, Alfred (or Alford) Miniard, and Roda (or Rhoda) Miniard. The only evidence of any real substance on which the conditional line can be established in accordance with their contention lies in the testmony of I. D. Miniard (Rhoda's husband) and Alford Miniard (brother of I. D. Miniard), and appellants contend it was incompetent.

The evidence in question, to which appellants seasonably objected, was this:

I. D. Miniard said that in 1928 David Turner (his grandfather, now deceased) pointed out the conditional line to him and gave him the written agreement between Turner and Huff; Miniard took the agreement to the county court clerk for recordation, but as it was not acknowledged it could not be recorded; he took it back home and shortly thereafter his house burned and the agreement was lost in the fire; his knowledge of the location of the conditional line was based on two sources, (a) his

grandfather's having shown it to him and (b) his inspection and recollection of the contents of the written instrument delivered to him by his grandfather.

Alford Miniard testified that his knowledge of the line resulted from his grandfather's having pointed it out to him and from his brother's having read the agreement to him.

The basis for the objection to this testimony by I. D. and Alford Miniard is KRS 421.210(2), which provides that "no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done * * * by one who is * * * dead when the testimony is offered to be given," etc.

■ We trust it is beyond question that the actions of David Turner in pointing out the boundaries to I. D. and Alford Miniard were "verbal statements" and "acts done" by a person deceased at the time the testimony was offered. Both of the witnesses were parties to the lawsuit. Alford was directly interested, and I. D. was interested through his wife, Rhoda. Cf. Truitt v. Truitt's Adm'r, 290 Ky. 632, 162 S.W.2d 31, 140 A.L.R. 1127 (1942); Gardner's Adm'r v. Dale, 309 Ky. 869, 219 S.W.2d 40, 42 (1949). There can be no doubt that this particular aspect of their testimony fell under the prohibition of the statute.

■ Neither was it permissible for either of the Miniards to relate the contents of the lost instrument.

"In general, statutes prohibiting a witness from testifying as to a transaction with or statements by a deceased person do not render him incompetent to testify as to the fact of the loss or destruction of a writing, *although he may not testify as to the contents of the instrument*, unless in the circumstances the testimony does not involve a personal transaction or communication with the deceased." (Emphasis added.) 58 Am.Jur. 167 (Witnesses, § 258).

"The rule followed by a majority of courts is that, where a statute prohibits a party or interested witness from testifying as to any transaction with or statement by a deceased person, such party or witness is incompetent to testify concerning the contents of an instrument executed by one deceased and subsequently lost or destroyed." Annotation, "Statute excluding testimony of one person because of death of another as applied to testimony in respect of lost of destroyed instrument," 79 A.L.R. 785, 791.

Since the opportunity of reading the agreement came through a transaction with the deceased about which I. D. Miniard could not testify, "the disqualification carries through and is inseparable." Gibbs v. Terry, Ky., 281 S.W.2d 712, 715 (1955).

There is still a further reason why the testimony relating the contents of this particular instrument was incompetent. It must be conceded that if David Turner himself had lived to appear at the trial, even he could not have testified as to the execution, contents or delivery of the agreement by the deceased Eli Huff. Isaacs v. Isaacs, 206 Ky. 540, 267 S.W. 1104 (1925); Ganter's Adm'r v. Smith, 254 Ky. 654, 72 S.W. 2d 58 (1934). The authenticity of the instrument depends entirely on what David Turner had to say about it, and if the law would not permit him to give the information himself, surely it would be absurd to hold that it could be given by someone else second hand—that is, by another person whose only source was the same David Turner.

One other witness, Robert Lewis, 91 years of age, a son-in-law of David Turner, said Turner had shown him the conditional line and they had "followed it to the top of the hill." However, Lewis did not otherwise locate the line, and his testimony was by no means sufficient to indicate where it was with reference to the 100-acre patent.

■ Eliminating the incompetent testimony of I. D. and Alford Miniard, there is not enough evidence in the record to support any factual conclusion one way or the other as to where the conditional line ran north of the marked rock on the ridge. Hence the chancellor's finding in this respect was clearly erroneous. CR 52.01.

On the issue of adverse possession, I. D. Miniard had a sheriff's deed executed in 1931 covering some 25 acres in the northeast portion of the 100-acre patent, lying east of the ridge hereinbefore mentioned as coinciding with appellees' version of the northern extremity of the conditional line. It was proved that I. D. Miniard had enclosed this 25-acre tract in fences and had regularly cultivated it ever since 1931 or 1932. Although the description set forth in appellants' complaint may take in a part of the 25 acres, they do not contest Miniard's title to that portion of the 100-acre survey.

■ The 1930 deed under color of which appellees claim some or all of the remaining portion of the 100 acres gives the unrecorded conditional line agreement as the source of title, but the description is so deficient that it would require a crystal ball to ascertain just what its author had in mind. I. D. Miniard testified that his grandfather "had control" of the entire 100 acres during his lifetime and that he, Miniard, had been "in possession of it and exercised control over it and been using it"[1] ever since he got his deed.[2] These vague allusions to "possession" and "control" are not sufficiently descriptive to establish the type of actual, physical dominion essential to a ripening of title by adverse possession. As a matter of fact, it is abundantly clear from the rest of I. D. Miniard's testimony that the only dominion ever exercised by

---

1. These were the words of a leading question propounded by counsel for appellees, to which the witness responded, "I have."

2. That is, the deed to Enoch Lewis, Alfred Miniard, and I. D. Miniard's wife, Rhoda.

**436**

him outside his 25-acre enclosure consisted of cutting timber off the westerly edge of the ridge in 1934 and 1935 and, perhaps, sporadic cutting of trees at other times. These activities did not fulfill the requirement of continuity for a 15-year period, much less the other necessary elements of title by adverse possession. "To be adverse * * * the possession must be actual, open, notorious, exclusive and continuous for the full statutory period." Sackett v. Miniard, 219 Ky. 765, 294 S.W. 487, 488 (1927).

■■ Despite the incomprehensible description in the 1930 conveyance, the chancellor upheld appellees' title by adverse possession on the further theory that the actual possession of part of a tract under color of title extends by construction to the outside limits of the description. Bypassing the lack of a reasonably well-defined boundary, which is an indispensable requisite to the proper application of that principle,[3] Miniard's possession under the 1930 deed, even if it had clearly defined the 100-acre patent, could not have extended by construction into the territory covered by a senior title. See J. Walter Wright Lumber Co. v. Baker, Ky., 395 S.W.2d 365 (decided March 26, 1965) and cases therein cited.

■ There was not a scintilla of probative evidence to sustain a finding that I. D. Miniard, David Turner, or any other person or persons ever have had the actual possession of any part of the 100-acre survey (other than the 25 acres conveyed by sheriff's deed to I. D. Miniard) for a continuous period of 15 years. Likewise there was no evidence of adverse possession existing at the time any of the deeds in appellants' chain of title were executed, so as to render them champertous. The chancellor's findings to the contrary in these respects also were clearly erroneous. CR 52.01.

The evidence produced by appellees being insufficient to support a finding of superior title from a common source or a finding of title by adverse possession, the paper title proved by appellants must prevail except as to the above mentioned 25 acres.

The cause is reversed with directions that a judgment be entered in accordance with this opinion.

3.  Lipps v. Turner, 164 Ky. 626, 176 S.W.2d 42, 44 (1915).