**JONES et al. v. SUTTON et al.**

Court of Appeals of Kentucky.

Feb. 27, 1953.

Wine & Venters and James W. Wine, Jr., Pikeville, Ky., for appellants.

F. D. Burke, Pikeville, Ky., C. P. Gillespie, Tazewell, Va., Ted Dalton, Radford, Va., for appellees.

CLAY, Commissioner.

This proceeding is a phase of a general controversy wherein appellants, relatives

of the late W. D. Sutton, are attempting to share in his estate. Suit was brought to set aside a judgment of adoption entered in 1920. The Chancellor dismissed appellants' petition.

W. D. Sutton died in 1948 a resident of Virginia, and by will left his widow a life estate in his property with remainder to Milligan College. This will has been contested by appellants in a Virginia lawsuit. Apparently after filing the will contest, it was learned that by virtue of the 1920 judgment W. D. Sutton and his wife had adopted one Paul Bishop, a nephew of Mrs. Sutton. If the adoption is effective, Paul Bishop would inherit Mr. Sutton's property in the event the will was set aside, so the present proceeding was commenced to invalidate the adoption. Appellants claim the adoption petition contained the forged signature of W. D. Sutton.

Some preliminary questions are raised which we will dispose of briefly. Appellees have filed a motion to strike the transcript of testimony because it was not made part of a bill of exceptions, though the testimony was heard orally before the Chancellor. Strict application of the rule stated in Ellis v. Central Trust Co. of Owensboro, 307 Ky. 794, 211 S.W.2d 818, which has been consistently followed and which has consistently served as a technical trap in equity cases, might well raise a serious question in this case, although appellants contend a certain agreed order obviated the necessity for a bill of exceptions. However, we have decided to pass this question and consider the evidence. (Both the Bench and the Bar should look with favor upon the abolition of the formal bill of exceptions by the New Rules of Civil Procedure which take effect July 1, 1953.)

Appellees contend that appellants are estopped to contest the validity of the adoption judgment, and rely in part upon KRS 199.540 which fixes a limitation period of two years within which to attack a judgment of adoption for "irregularity in procedures". Without deciding the question, we are inclined to the view that if a forgery constitutes a fraud upon the court, the judgment might be adjudged void without regard to statutory limitations based upon "irregularity". We will, therefore, assume appellants have the right in this proceeding to question the judgment's validity.

Coming now to the merits, it is evident that appellants carry a heavy burden. The judgment attacked has been in effect over 30 years, and there is a strong presumption it is valid and binding. It may be said that heretofore there has been no reason to attack the judgment, but courts naturally hesitate to upset rights so long ago adjudicated.

We will also assume, as appellants contend, that the signatures of both W. D. Sutton and his wife Nanye were mandatorily required on the petition for adoption, in order to give the court jurisdiction under the provisions of section 2071, Kentucky Statutes, then in effect. On the face of the petition those two signatures appear. To the unpracticed eye they are perfectly legitimate. Below the signatures is the typewritten statement that the instrument was "subscribed and sworn to" before J. M. Hatcher, a notary public, on December 17, 1919. When appellants undertake to invalidate the signature of W. D. Sutton, they must also prove fraud or mistake in the execution of the notary's certificate. KRS 61.060.

Admitting the difficulties with which they are confronted, appellants have by various means undertaken to discredit Nanye Sutton and to suggest a motive for fabricating an adoption. While the trend of some testimony might support a suspicion that the adoption could have been a part of some collateral scheme, subsequent developments do not lend the theory much support. The real beneficiary, if any, would be Paul Bishop and not Mrs. Sutton, and so far it does not appear that he is making any effort to claim an interest in the estate. It is difficult to conceive in what respect Mrs. Sutton would actually have benefited from the adoption. At any rate, her alleged motives and machinations could not be considered direct evidence of the forgery claimed.

Such evidence presented by appellants consisted in part of testimony of Mr. Sutton's sister Margaret, who stated positively

that the signature on the adoption petition was not that of her brother. In addition, she testified that her brother had advised her that he had not adopted Paul Bishop. Margaret seems to be a decidedly interested witness, and because of the length of time which has elapsed, it is not easily understandable how she can be so positive that a signature, which certainly resembles a true one of her brother's, is not his.

The other direct evidence supporting appellants' claim is the testimony of a handwriting expert. He made an analysis of Mr. Sutton's normal signature, and stated that the one appearing on the adoption petition was a forgery. He pointed out that the signature had been "touched up" or "patched". This is patently true, but the same is true of Nanye Sutton's signature. It could indicate that the "touching up" was done by both signers because the pen used did not have a free flow of ink. We will not, however, try to out-expert the expert; but it is possible he could have been mistaken. At best such testimony is not of the strongest character. See Strode, Executrix, etc. v. Strode, 194 Ky. 665, 240 S.W. 368, 27 A.L.R. 313.

Opposed to appellants' proof is the testimony of Mrs. Sutton that her husband's true signature appears on the adoption petition. Considering Mrs. Sutton as an interested party, the weight of her testimony might be brought in question. There is also the testimony of a banker and a lawyer which supports the verity of the signature. This testimony is not conclusive, but it may be given some weight.

With the question still in doubt, the balance wheel of conviction is swung heavily in favor of the signature by the testimony of the notary public who acknowledged it. He testified that he signed the jurat and that W. D. Sutton subscribed and swore to the document before him. With commendable honesty, he stated that he could not recollect the actual signing, but his conclusion was based upon the recognition of his own signature. The substance of his testimony is that if he acknowledged Mr. Sutton's signature, Mr. Sutton signed. This is the very purpose of acknowledgments. Lapse of time may dim a memory, but a signed certification of a fact remains positive as long as the writing lasts. That is why only clear and convincing parol evidence will overthrow it. See Dukes v. Davis, 125 Ky. 313, 101 S.W. 390; Turner v. Howard, 277 Ky. 172, 126 S.W.2d 135.

The Chancellor, in an excellent opinion, carefully analyzed the proof in the case. He decided that appellants' evidence fell materially short of that degree of certainty necessary to overturn the adoption judgment. We do not have a doubt concerning the correctness of his conclusion.

The judgment is affirmed.